NEW TEK MANUFACTURING, INC., A NEBRASKA CORPORATION, APPELLANT, V. JOHN A. BEEHNER ET AL., APPELLEES.

702 N.W.2d 336

Filed July 29, 2005. No. S-03-457.

Roger P. Cox and Gregory D. Barton, of Harding, Shultz & Downs, and Roger D. Greer and Steven P. Fallon, of Greer, Burns & Crain, Ltd., for appellant.

William H. Selde and Michael G. Monday, of Sodoro, Daly & Sodoro, for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

The plaintiff, New Tek Manufacturing, Inc. (New Tek), sued John A. Beehner, its former attorney, and his law office for professional negligence, alleging that Beehner's negligence had caused the expiration of a patent issued to New Tek. New Tek alleged that its patent had been infringed and that because of Beehner's negligence, New Tek was unable to sue the alleged infringer. The district court entered summary judgment against New Tek, concluding that the alleged infringer's device would not have been found to infringe on New Tek's patent, and that thus, New Tek had not been damaged by Beehner's conduct. The issues in this appeal are whether the district court correctly construed New Tek's patent and whether the district court correctly concluded that the accused device could not have been found to infringe on New Tek's patent. For the reasons that follow, we reverse the judgment of the district court and remand the cause for further proceedings.

## BACKGROUND

The patented device at issue in this case is a "row following guidance device for a tractor-drawn row crop implement," designed to help operators of farm equipment guide implements through a crop field without accidentally deviating from the crop row and destroying planted crops. As the patent explains, tractor-drawn farm implements may carry groundworking tools spaced as close as 4 inches apart, and a tractor operator is generally situated in a cab located several feet above and forward of the implement, so it can be difficult to view the actual engagement of the tools with the ground. In an operation such as cultivating, only a slight misalignment of the tractor with the crop row may cause the implement to uproot several rows.

The patented device was intended, generally, to be a "row following guidance device" that connects the left and right sides of the forward end of an implement to the tractor, and adjusts the length of each left and right connection so that the implement will follow a crop row independently, even if the tractor deviates from the crop row. A wheel, following the crop row, signals a steering valve upon any deviation from the alignment of the implement with the crop row, and the steering valve corrects the deviation by lengthening one of the connections between the implement and the tractor and shortening the other connection. .

Eugene Schmidt invented this "row following guidance device" and assigned his rights to Sunco Systems, Inc. (Sunco). A patent application was filed with the U.S. Patent and Trademark Office (the Patent Office) on April 24, 1985, and patent No. 4,640,365 (the '365 patent) was issued on February 3, 1987. After Schmidt saw a potentially infringing device at a farm equipment show, Sunco decided to broaden the patent by filing a reissue patent application on December 14, 1987.

In 1988, while the reissue patent application was pending, Sunco's counsel retired from the practice of law and recommended that Sunco retain Beehner. In 1989, New Tek was formed to assemble farm equipment based on Sunco parts, and the rights for the '365 patent and the reissue patent application were assigned to New Tek.

For purposes of this appeal, New Tek's allegations of Beehner's duties, and breach thereof, are not at issue. New Tek

alleged that Beehner was responsible for pursuing the reissue patent application and maintaining the '365 patent, in part by ensuring that the maintenance fees for the '365 patent were filed. However, Beehner did not diligently prosecute the reissue patent application, nor did he pay the maintenance fees for the '365 patent, which became due in August 1990. Beehner revived the reissue patent application pursuant to a petition filed on December 18, 1990, but did not take action with respect to the '365 maintenance fee before the end of the maintenance fee grace period, which expired on February 3, 1991. Although this resulted in the expiration of the '365 patent and rendered the reissue patent application defective, Beehner continued prosecution of the reissue patent application. Eventually, New Tek lost patience with Beehner's prosecution of the reissue patent application and retained new counsel.

The reissue patent application was eventually allowed, and reissue patent No. 34,080 (the '080 patent) was issued on September 29, 1992. However, the '080 patent was defective because of the expiration of the '365 patent, of which New Tek was still unaware. On November 16, 1994, New Tek's counsel submitted the maintenance fee for the '080 patent to the Patent Office but, on December 19, was informed that the maintenance fee would not be accepted because the '080 patent had expired due to the failure to timely pay the maintenance fee for the '365 patent.

Ultimately, the Patent Office accepted New Tek's petition for late payment of the '365 maintenance fee, and the '365 patent was revived. However, New Tek lost the benefit of the expanded scope of the '080 patent—specifically, claim 22 of the '080 patent, which was not contained in the '365 patent, and will be explained in more detail below. Furthermore, the revival of the '365 patent did not afford New Tek protection from infringing uses that began between the expiration of the patent and the acceptance of the late maintenance fee. See 35 U.S.C. § 41(c)(2) at 754 (2000) ("[a] patent, the term of which has been maintained as a result of the acceptance of a payment of a maintenance fee . . . shall not abridge or affect the right of any person . . . who made, purchased, offered to sell, or used anything protected by the patent . . . after the 6-month grace period but prior to the acceptance of a maintenance fee").

New Tek filed suit against Beehner and his law office in the district court on December 12, 1995, alleging professional negligence. Beehner died during the pendency of the suit, and Beehner's estate was substituted (hereinafter the defendant). After proceedings unrelated to the issues presented in this appeal, the district court held a *"Markman* hearing" pursuant to *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995), *affirmed* 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996), and entered an order construing the '080 patent for purposes of this litigation.

The defendant then filed a motion for summary judgment, which the court sustained. The parties had narrowed their inquiry to a particular device made by Orthman Manufacturing, Inc. (the Orthman device). The court determined as a matter of law that the Orthman device would not have been found to infringe on the '080 patent. The court's construction of the '080 patent and its reasoning with respect to the hypothetical infringement of that patent will be discussed below in more detail, after an explanation of the legal principles governing the issues presented. New Tek's claim was dismissed to the extent that it relied on allegations of hypothetical third-party infringement on the '080 patent, and New Tek voluntarily dismissed its remaining claims so that it could proceed with this appeal on the issue of infringement.

## ASSIGNMENTS OF ERROR

New Tek assigns, consolidated and restated, that the district court erred in (1) conducting a *Markman* hearing to construe the '080 patent claims instead of submitting claim construction to the jury; (2) failing to consider that the '080 patent had intrinsic value aside from potential enforcement against third parties for infringement; (3) concluding that element 4 of claim 22 of the '080 patent was a means-plus-function element pursuant to 35 U.S.C. § 112, ¶ 6 (2000); and (4) concluding that the accused device would not have been found to infringe the '080 patent under the doctrine of equivalents.

The defendant assigns several errors to the district court in a purported cross-appeal, arguing that the court erred in rejecting other grounds for dismissing New Tek's claims. However, the

defendant did not comply with the requirements of Neb. Ct. R. of Prac. 9D(4) (rev. 2001). A cross-appeal must be properly designated under rule 9D(4) if affirmative relief is to be obtained. *Gourley v. Nebraska Methodist Health Sys.*, 265 Neb. 918, 663 N.W.2d 43 (2003). An appellee's argument that a lower court's decision should be upheld on grounds specifically rejected below constitutes a request for affirmative relief, and the appellee must cross-appeal in order for that argument to be considered. *Wasikowski v. Nebraska Quality Jobs Bd.*, 264 Neb. 403, 648 N.W.2d 756 (2002). Thus, we will not consider the defendant's purported assignments of error, except insofar as the defendant argues that this court lacks subject matter jurisdiction over issues of patent law. Lack of subject matter jurisdiction may be raised at any time by any party or by the court sua sponte. *In re Interest of Jaden H.*, 263 Neb. 129, 638 N.W.2d 867 (2002).

## STANDARD OF REVIEW

■ A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law. *Cox Nebraska Telecom v. Qwest Corp.*, 268 Neb. 676, 687 N.W.2d 188 (2004).

■ Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Blair v. State Farm Ins. Co.*, 269 Neb. 874, 697 N.W.2d 266 (2005). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Dworak v. Farmers Ins. Exch.*, 269 Neb. 386, 693 N.W.2d 522 (2005).

## ANALYSIS

### SUBJECT MATTER JURISDICTION

■ Prior to discussing New Tek's assignments of error, we address the defendant's argument that we do not have subject matter jurisdiction over this case. Before reaching the legal issues presented for review, it is the duty of an appellate court to

settle jurisdictional issues. *Gabel v. Polk Cty. Bd. of Comrs.*, 269 Neb. 714, 695 N.W.2d 433 (2005).

■ The defendant argues that the district court and this court lack subject matter jurisdiction over this case due to 28 U.S.C. § 1338(a) (2000), which provides that federal district courts "have original jurisdiction of any civil action arising under any Act of Congress relating to patents . . . . Such jurisdiction shall be exclusive of the courts of the states in patent . . . cases." Pursuant to § 1338(a), federal courts have exclusive jurisdiction in cases in which a well-pleaded complaint establishes either that (1) federal patent law creates the cause of action or (2) the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims. *Stark v. Advanced Magnetics, Inc.*, 50 Mass. App. 226, 736 N.E.2d 434 (2000), citing *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 108 S. Ct. 2166, 100 L. Ed. 2d 811 (1988).

■ However, not every case involving a patent question is within the exclusive jurisdiction of the federal courts, because not every dispute involving a patent arises under the patent laws within the meaning of § 1338(a). See, *Atari, Inc. v. JS & A Group, Inc.*, 747 F.2d 1422 (Fed. Cir. 1984), *overruled on other grounds, Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059 (Fed. Cir. 1998); 7 Ernest Bainbridge Lipscomb III, Lipscomb's Walker on Patents § 23:5 (3d ed. 1988). State courts have jurisdiction to decide questions arising under the patent law when they are incidental to cases that do not arise under that law. 7 Lipscomb, *supra.*

> A cause of action will arise under federal patent law when it involves the validity, scope or infringement of a patent. . . . When patent issues are merely implicated incidentally in a cause of action, however, federal courts do not have jurisdiction of the case pursuant to § 1338.

*Kaufman Malchman & Kirby, P.C. v. Hasbro, Inc.*, 897 F. Supp. 719, 721 (S.D.N.Y. 1995), citing *Ballard Medical Products v. Wright*, 823 F.2d 527 (Fed. Cir. 1987). Patent matters that are primarily concerned with tortious wrongdoing may be tried in the state courts, and where such a state court suit is brought, the validity of a patent or its infringement may properly be considered by

the state court. *Leesona Corporation v. Concordia Mfg. Co.*, 312 F. Supp. 392 (D.R.I. 1970).

▇ The cause of action alleged here is the tort of legal malpractice. In civil legal malpractice actions, a plaintiff alleging attorney negligence must prove three elements: (1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) that such negligence resulted in and was the proximate cause of loss (damages) to the client. *Borley Storage & Transfer Co. v. Whitted*, 265 Neb. 533, 657 N.W.2d 911 (2003). In such an action, the plaintiff must show that he or she would have been successful in the underlying action but for the attorney's negligence. *Bowers v. Dougherty*, 260 Neb. 74, 615 N.W.2d 449 (2000).

We conclude that contrary to the defendant's suggestion, this case is not one "arising under" the patent law within the meaning of § 1338(a). The sole cause of action presented in this case is professional negligence. Patent law is implicated only incidentally, in that the measure of New Tek's alleged damages requires consideration of the hypothetical infringement of the '080 patent. But the precise question is not whether Orthman Manufacturing infringed on the '080 patent; rather, the question is whether, absent Beehner's negligence, New Tek would have been successful in an infringement action against Orthman. See *Bowers, supra.* The construction and alleged infringement of the '080 patent is relevant only insofar as it helps us to determine who would have prevailed in that hypothetical action. Simply stated, it is difficult to see how this case arises under federal patent law when on the record before us, the only patent that has been construed, and of which infringement is alleged, has expired. The federal government has no interest in hypothetical determinations regarding an unenforceable patent.

In short, the cause of action asserted in this case, and the remedy sought, arise entirely under state law. The defendant's argument regarding subject matter jurisdiction is without merit.

## MARKMAN HEARING ON CLAIM CONSTRUCTION

In its first assignment of error, New Tek asserts that the court erred in holding a *Markman* hearing to construe the '080 patent. Instead, New Tek argues that the construction of the patent claims should have been given to a jury.

The Federal Circuit held in *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (*Markman I*), *affirmed* 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996) (*Markman II*), that claim construction is a matter of law and that the court has the power and obligation to construe as a matter of law the meaning of the language used in the patent claim. See, also, Neb. Rev. Stat. § 25-1104 (Reissue 1995) ("[i]ssues of law must be tried by the court"). *Markman I* and *II* have established, in practice, a bifurcated procedure for patent infringement cases, in which the court first determines the scope and meaning of the patent claims asserted, and then the properly construed claims are compared to the allegedly infringing device. See *Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448 (Fed. Cir. 1998). The construction of a patent, including terms of art within its claim, is exclusively within the province of the court. See, *Markman II*; *Cybor Corp., supra.*

New Tek does not dispute that rule; rather, New Tek argues that *Markman* hearings did not exist prior to the *Markman I* decision and, thus, should not be applied in this action because any action against Orthman Manufacturing to enforce the '080 patent would have taken place prior to the *Markman I* decision. But New Tek's argument that *Markman I* represented a change in the law is contrary to the Federal Circuit's decision in that case.

New Tek contends that prior to *Markman I*, claim construction was a jury question. However, in *Markman I*, the court explained that its opinions had contained some inconsistent statements as to whether, and to what extent, claim construction was a legal or factual issue. Compare, e.g., *Tol-O-Matic v. Proma Produkt-Und Marketing*, 945 F.2d 1546 (Fed. Cir. 1991), *abrogated, Markman I*; *Unique Concepts, Inc. v. Brown*, 939 F.2d 1558 (Fed. Cir. 1991). New Tek cites only cases implying that claim construction was a question of fact and fails to acknowledge the second line of Federal Circuit opinions discussed in *Markman I*, which held that claim construction was a question of law for the court.

But the Federal Circuit resolved that split in authority by noting that "[n]otwithstanding the apparent inconsistencies in our opinions, the Supreme Court has repeatedly held that the construction of a patent claim is a matter of law exclusively for the

court." *Markman I*, 52 F.3d at 977 (citing cases). New Tek's argument that *Markman I* was a change in the law is incorrect. While, as the *Markman I* court explained, there were Federal Circuit decisions containing erroneous statements of law, there was an equally authoritative line of decisions to the contrary, and most significantly, the U.S. Supreme Court had decided the matter in favor of the holding reaffirmed in *Markman I*. Pursuant to the U.S. Supreme Court's established precedent, claim construction was a matter of law to be decided by the court, even prior to the Federal Circuit's decision in *Markman I*. Thus, even assuming that New Tek is correct in contending that a change in the law should not be applied retroactively, the district court did not err in applying the *Markman I* holding in the present case.

New Tek also argues that a state court should refrain from holding a *Markman* hearing, because state courts are inexperienced in patent claim construction. This argument is meritless for two reasons. First, New Tek does not explain how asking a jury to decide issues of claim construction solves the problem of alleged inexperience. Absent the unlikely circumstance of a venire composed entirely of mechanical engineers and patent lawyers, a jury would be at least equally inexperienced. Second, the fact that patent law does not regularly appear on our docket does not change our responsibility to decide the issues presented to us under the applicable law. It is well established that claim construction is a question of law for a court to decide, and we will faithfully discharge that duty. We, therefore, reject New Tek's first assignment of error.

### INTRINSIC VALUE OF '080 PATENT

New Tek argues that even assuming it could not have prevailed in an infringement action, it was still damaged because it lost the intrinsic value of the '080 patent. New Tek claims that the '080 patent was personal property and, like other personal property, had monetary value. See 35 U.S.C. § 261 (2000). New Tek asserts that even in the absence of damages resulting from the loss of a potential infringement action, it was still entitled to recover for the loss of the cash value of the '080 patent. Thus, New Tek claims that summary judgment was improper.

New Tek's argument is unavailing for two reasons. First, New Tek's petition fails to allege a theory of damages based on the

intrinsic worth, if any, of the '080 patent. Under our former code pleading system, which was applicable in the present case, the purpose of pleadings was to frame the issues upon which a cause is to be tried, and the issues in a given case will be limited to those which are pled. See *Kubik v. Kubik*, 268 Neb. 337, 683 N.W.2d 330 (2004). New Tek specifically alleged damages for costs and attorney fees incurred in pursuing the revival of the '365 and '080 patents, and damages resulting from alleged infringement of the '080 patent. New Tek did not allege that the '080 patent had inherent property value, or plead any theory of damages on such a basis.

Second, after summary judgment was granted with respect to damages resulting from third-party infringement, New Tek waived trial on the remaining damages. Any claims beyond damages for third-party infringement were voluntarily dismissed, with prejudice, in order to allow New Tek to appeal the issues relating to infringement. See, generally, *Smith v. Lincoln Meadows Homeowners Assn.*, 267 Neb. 849, 678 N.W.2d 726 (2004). In other words, even if New Tek had properly presented a claim for the property value of the '080 patent, it necessarily waived that claim in order to secure a final, appealable judgment.

New Tek also argues, in very general terms, that the district court should not have entered summary judgment on the issue of damages because New Tek alleged that it had been damaged. New Tek points out that an "issue of fact" arises upon a material allegation in a pleading that is denied by a responsive pleading. Neb. Rev. Stat. § 25-1102 (Cum. Supp. 2004). An issue of fact arising in actions for the recovery of money shall be tried by a jury. § 25-1104. New Tek concludes that because the issue of damages was pled and denied, the court was required to submit the issue to the jury. In addition, much of New Tek's brief is devoted to similar assertions that because a particular issue was an "issue of fact," it could only be decided by a jury, and summary judgment was improper.

New Tek's arguments in that regard lack merit. Neb. Rev. Stat. § 25-1332 (Cum. Supp. 2004) provides that after a hearing on a motion for summary judgment, "[t]he judgment sought shall be rendered forthwith if the pleadings and the evidence admitted at the hearing show that there is no genuine issue as to

any material fact and that the moving party is entitled to judgment as a matter of law." New Tek fails to apprehend the distinction between an "issue of fact" within the meaning of § 25-1104, and a "*genuine* issue as to any *material* fact" within the meaning of § 25-1332. (Emphasis supplied.) The primary purpose of the summary judgment procedure is to pierce the allegations made in the pleadings and show conclusively that the controlling facts are other than as pled. *Richards v. Meeske*, 268 Neb. 901, 689 N.W.2d 337 (2004). New Tek's argument that simply alleging an issue of fact is sufficient to defeat a motion for summary judgment is contrary to the language and purpose of § 25-1332, and we need not consider it further.

## MEANS-PLUS-FUNCTION CONSTRUCTION

██ New Tek's third assignment of error is that the district court erred in construing element 4, claim 22, of the '080 patent as a means-plus-function element. Whether an element of a claim is in means-plus-function format is a matter of claim construction and is thus a question of law, reviewed de novo by an appellate court. *Kemco Sales Inc. v. Control Papers Co., Inc.*, 208 F.3d 1352 (Fed. Cir. 2000). In a de novo review, an appellate court reaches a conclusion independent of the trial court. *Whipps Land & Cattle Co. v. Level 3 Communications*, 265 Neb. 472, 658 N.W.2d 258 (2003).

To understand New Tek's argument, it is necessary to explain what is meant by a "means-plus-function element" of a patent claim. Generally, an applicant for a patent is required to describe an invention in full, clear, and concise terms and conclude the specification "with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112, ¶ 2. In *Halliburton Co. v. Walker*, 329 U.S. 1, 67 S. Ct. 6, 91 L. Ed. 3 (1946), the U.S. Supreme Court prohibited the use of exclusively functional language to describe crucial elements of a combination claim, i.e., a claim for an invention comprised of a combination of separate elements. The Court held that a patent failed to satisfy the requirements of distinctiveness and specificity in a combination claim when a crucial element was described in terms of what it would do, rather than in terms of its physical characteristics or arrangement in the invention. See *id.*

In response, Congress enacted § 112, ¶ 6, providing that

> [a]n element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

This new language permitted a patent applicant to express an element in a combination claim as a means for performing a function. The applicant need not recite structure, material, or acts in the claim's means-plus-function element. See *Valmont Industries, Inc. v. Reinke Mfg. Co., Inc.*, 983 F.2d 1039 (Fed. Cir. 1993). However, a claim element described as a means for performing a function, if read literally, could encompass any conceivable means for performing the function. See *id.* In order to narrow the literal scope of such a recitation, the applicant must describe in the patent specification some structure which performs the specified function. See *id.*

In short, a patent applicant must conclude the specification of his or her invention with one or more claims particularly describing the invention. Such a claim may be for an invention consisting of a combination of different elements. An element may be expressed in terms of a means for performing a function, so long as the specification contains some description of a structure that performs that function. Such an element is a means-plus-function element.

The word "means" is part of the classic template for means-plus-function elements. *Rodime PLC v. Seagate Technology, Inc.*, 174 F.3d 1294 (Fed. Cir. 1999). The use of the word "means" in an element of a claim gives rise to a presumption that § 112, ¶ 6, applies. *TI Group Automotive Systems v. VDO North America*, 375 F.3d 1126 (Fed. Cir. 2004), *cert. denied* 543 U.S. 1147, 125 S. Ct. 1305, 161 L. Ed. 2d 109 (2005). Two specific rules, however, overcome that presumption. First, a claim element that uses the word "means" but recites no function corresponding to the means does not invoke § 112, ¶ 6. Second, even if the claim element specifies a function, if it also recites sufficient structure or material for performing that function, § 112, ¶ 6, does not apply. *Rodime PLC, supra.*

It is the second exception that is implicated in this case. According to its express terms, § 112, ¶ 6, governs only claim elements that do not recite sufficient structural limitations. *Al-Site Corp. v. VSI Intern., Inc.*, 174 F.3d 1308 (Fed. Cir. 1999). Therefore, the presumption that § 112, ¶ 6, applies is overcome if the claim itself recites sufficient structure or material for performing the claimed function. *Al-Site Corp., supra.* In other words, a *specification* containing an alleged means-plus-function claim element must also recite a description of a structure for performing that function, but to invoke § 112, ¶ 6, the *claim element* itself must not recite a definite structure which performs the described function. See, *TI Group Automotive Systems, supra*; *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524 (Fed. Cir. 1996).

With those principles in mind, we turn to the specific language of the '080 patent disputed by the parties. Claim 22 of the '080 patent describes a "guidance device for a tractor-drawn implement" and contains four elements. The first three elements of claim 22 are (1) a horizontal elongated member having means for attachment to the front end of a farm implement; (2) a means for increasing the distance between one end of the elongated member and the tractor and decreasing the distance between the other end of the elongated member and the tractor, including two articulated members, each of which includes an elongated arm pivotally connected to one side of the tractor and a lever pivotally connected to one side of the elongated member; and (3) a means, connected to the elongated member and responsive to lateral movements of the elongated member in relation to the crop rows, for transmitting signals to the means for controlling the distance between the elongated member and the tractor. The dispute here concerns element 4, which is a

> means activated by said signal transmitting means for pivoting said levers oppositely and proportionally directionwise about their pivotal connections to said elongated member, further including:
>
> a first hydraulic cylinder pivotally connected at one end to the free end of the lever of said first articulated member and pivotally connected at the other end to said elongated member at a point spaced away from the pivotal

connection of said first member lever to said elongated member; and

a second hydraulic cylinder pivotally connected at one end to said elongated member and pivotally connected at the other end to the lever of said second articulated member at a point spaced away from the pivotal connection of said lever to said elongated member.

The district court concluded that element 4 was a means-plus-function element. The court concluded that while element 4 recited a detailed structure, it did not provide the structure necessary to perform the claimed function in its entirety. Therefore, the court concluded the presumption that element 4 was a means-plus-function element was not rebutted. See *TI Group Automotive Systems v. VDO North America*, 375 F.3d 1126 (Fed. Cir. 2004), *cert. denied* 543 U.S. 1147, 125 S. Ct. 1305, 161 L. Ed. 2d 109 (2005).

We conclude that the district court correctly determined that the presumption of a means-plus-function element had not been rebutted. As the court noted, the function of element 4 is " 'pivoting said levers oppositely and proportionately directionwise about their pivotal connections to said elongated member.' " The hydraulic cylinders recited in element 4 provide a means for moving each lever, but no structure to translate that movement in a directly proportional amount in the opposite direction. Instead, the structure disclosed in the specification includes a component not recited in element 4: a tie rod, attached to the top of the two levers, that serves to translate the movement to the opposing cylinder.

Element 4 itself does not recite sufficient structure for performing the function of pivoting the levers oppositely and proportionally, because of the absence of any means of translating movement in the opposite direction to the opposing cylinder. In other words, element 4 does not recite sufficient structure to entirely perform the claimed function. See, *TI Group Automotive Systems, supra*; *Rodime PLC v. Seagate Technology, Inc.*, 174 F.3d 1294 (Fed. Cir. 1999). The district court did not err in concluding New Tek had not overcome the presumption that element 4 was a means-plus-function element. See *id.* We reject New Tek's third assignment of error.

## DOCTRINE OF EQUIVALENTS

As previously noted, the district court concluded the Orthman device did not infringe on claim 22 of the '080 patent. New Tek argues the court erred in not finding an issue of material fact based upon the doctrine of equivalents.

The doctrine of equivalents prevents a copyist from evading patent claims with insubstantial changes. *Valmont Industries, Inc. v. Reinke Mfg. Co., Inc.*, 983 F.2d 1039 (Fed. Cir. 1993). An unscrupulous copyist may not make unimportant and insubstantial changes and substitutions in a patent which, though adding nothing, would be enough to take the copied matter outside the claim. *Id.*, citing *Graver Mfg. Co. v. Linde Co.*, 339 U.S. 605, 70 S. Ct. 854, 94 L. Ed. 1097 (1950). An equivalent under the doctrine of equivalents results from an insubstantial change which, from the perspective of one of ordinary skill in the art, adds nothing of significance to the claimed invention. *Id.* An equivalent under the doctrine of equivalents, though not literally meeting the claims, still infringes the patent. *Id.* Each element contained in a patent claim is deemed material to defining the scope of the patented invention, and the doctrine of equivalents is applied to individual elements of the claim, not to the invention as a whole. *Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 117 S. Ct. 1040, 137 L. Ed. 2d 146 (1997). If an accused device lacks any limitation or an equivalent, it does not infringe the claim. *Valmont Industries, Inc., supra.*

In this case, it is not entirely clear whether the district court's analysis of allegedly equivalent structure in the Orthman device was conducted pursuant to § 112, ¶ 6, or the equitable doctrine of equivalents. Section 112, ¶ 6, and the doctrine of equivalents have separate origins and purposes. Section 112, ¶ 6, limits the broad language of means-plus-function elements in combination claims to equivalents of the structures, materials, or acts in the specification. The doctrine of equivalents equitably expands exclusive patent rights. *Valmont Industries, Inc., supra.* But although these analyses are not coextensive, and have different origins and purposes, their tests for equivalence are closely related. *Chiuminatta Concrete Concepts v. Cardinal Industries*, 145 F.3d 1303 (Fed. Cir. 1998), citing *Warner-Jenkinson Co., supra.*

One difference is a question of timing. A proposed equivalent must have arisen at a definite period in time, either before or after the patent filing. If before, then a § 112, ¶ 6, structural equivalents analysis applies and any analysis for equivalent structure under the doctrine of equivalents collapses into the § 112, ¶ 6, analysis. *Frank's Casing Crew v. Weatherford Intern.*, 389 F.3d 1370 (Fed. Cir. 2004). If after, then a nontextual infringement analysis proceeds under the doctrine of equivalents. *Id.* See, generally, *Al-Site Corp. v. VSI Intern., Inc.*, 174 F.3d 1308 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, supra.* Another difference is that under § 112, ¶ 6, the accused device must perform the identical function as recited in the claim element, while the doctrine of equivalents may be satisfied when the function performed by the accused device is only substantially the same. *Al-Site Corp., supra.*

But where, as here, there is no evidence that the alleged equivalent is after-arising technology, and equivalence of the function of the claimed element is not disputed, the test for insubstantial differences is the same under either § 112, ¶ 6, or the doctrine of equivalents. See, e.g., *Frank's Casing Crew, supra*; *Searfoss v. Pioneer Consol. Corp.*, 374 F.3d 1142 (Fed. Cir. 2004); *Chiuminatta Concrete Concepts, supra.* Where there is identity of function and no after-arising technology, a means-plus-function limitation that is infringed under the doctrine of equivalents is also literally present in the accused device. Similarly, if an accused product performs an identical function yet avoids literal infringement under § 112, ¶ 6, for lack of a structural equivalent, it will fail the doctrine of equivalents test for the same reason. See *Frank's Casing Crew, supra*; *Al-Site Corp., supra.* Therefore, it is not significant, for purposes of our review, that the district court's analysis did not clearly distinguish between these two related inquiries.

The inquiry for equivalent structure under § 112, ¶ 6, examines whether the assertedly equivalent structure performs the claimed function in substantially the same way to achieve the same result as the corresponding structure described in the specification. *Frank's Casing Crew, supra.* See, also, *Ishida Co., Ltd. v. Taylor*, 221 F.3d 1310 (Fed. Cir. 2000). The doctrine of equivalents does not require a one-to-one correspondence of components. *Wiener*

*v. NEC Electronics, Inc.*, 102 F.3d 534 (Fed. Cir. 1996), *abrogated on other grounds, Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448 (Fed. Cir. 1998). The vantage point of one of ordinary skill in the relevant art provides the perspective for assessing the substantiality of the differences between the claimed invention and the accused device. *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354 (Fed. Cir. 2004).

Here, the district court determined that a substantial difference existed and that the Orthman device did not infringe on claim 22. The court noted that claim 22 specifically described a "pivotal connection" between each hydraulic cylinder in element 4 and the elongated member and respective lever. The Orthman device, on the other hand, employs a single hydraulic cylinder, directly mounted on the elongated member without employing a pivotal connection. The court did not address whether the single hydraulic cylinder of the Orthman device was equivalent to the two hydraulic cylinders recited in claim 22 of the '080 patent; rather, the court concluded that the difference between a pivotal connection and direct mount to the end of the hydraulic cylinder on the elongated member was substantial.

 However, we conclude that the record fails to establish the defendant's prima facie case for summary judgment on this issue. On a motion for summary judgment, the question is not how a factual issue is to be decided, but whether any real issue of material fact exists. *Range v. Abbott Sports Complex*, 269 Neb. 281, 691 N.W.2d 525 (2005). The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that it is entitled to judgment as a matter of law. *Woodhouse Ford v. Laflan*, 268 Neb. 722, 687 N.W.2d 672 (2004). A party moving for summary judgment must make a prima facie case by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence were uncontroverted at trial. Once the moving party makes a prima facie case, the burden to produce evidence, showing the existence of a material issue of fact that prevents judgment as a matter of law, shifts to the party opposing the motion. *Richards v. Meeske*, 268 Neb. 901, 689 N.W.2d 337 (2004).

Determination of infringement, both literal and under the doctrine of equivalents, is a question of fact. *Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 324 F.3d 1308 (Fed. Cir. 2003). Whether the accused device exactly contains each element, as properly construed, or its equivalent, is a determination of fact. *Overhead Door Corp. v. Chamberlain Group, Inc.*, 194 F.3d 1261 (Fed. Cir. 1999). See, also, *Odetics, Inc. v. Storage Technology Corp.*, 185 F.3d 1259 (Fed. Cir. 1999) (whether accused device infringes § 112, ¶ 6, claim as equivalent is question of fact).

Here, the evidence adduced in support of the defendant's motion for summary judgment consisted of the relevant patent documents and the depositions of William Orthman, of Orthman Manufacturing, and Richard Wood, New Tek's expert witness. Orthman's testimony primarily concerned the development and sales of the Orthman device, although Orthman's counsel took the position, on behalf of Orthman Manufacturing, that the Orthman device did not infringe the '080 patent. It suffices to say that no aspect of Orthman's testimony provides a basis for a finding of noninfringement. Wood, on the other hand, clearly expressed his opinion that the Orthman device infringed on the '080 patent pursuant to the doctrine of equivalents. Wood is a patent attorney and has a degree in mechanical engineering and experience as an engineer. The primary purpose of Wood's testimony was to opine about the relevant standard of care for a patent attorney, and Beehner's alleged breach of that standard. However, Wood was also asked to opine on the doctrine of equivalents. Wood specifically opined, although not in great detail, that the Orthman device incorporated equivalents to each and every element recited in claim 22 of the '080 patent.

We recognize that Wood's opinion is similar to conclusory opinions regarding infringement that have been rejected by the Federal Circuit as insufficient to defeat a motion for summary judgment. See, e.g., *Schoell v. Regal Marine Industries, Inc.*, 247 F.3d 1202 (Fed. Cir. 2001). Compare, e.g., *Optical Disc Corp. v. Del Mar Avionics*, 208 F.3d 1324 (Fed. Cir. 2000). But equivalence is evaluated from the perspective of one of ordinary skill in the relevant art. *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354 (Fed. Cir. 2004). An element in the accused product is equivalent to a claim limitation if the differences

between the two are insubstantial to one of ordinary skill in the art. *Searfoss v. Pioneer Consol. Corp.*, 374 F.3d 1142 (Fed. Cir. 2004); *Overhead Door Corp., supra.* Here, aside from Wood's admittedly conclusory testimony, there is no evidence that would permit a trier of fact to conclude, one way or the other, whether one of ordinary skill in the pertinent art would consider the difference between element 4, claim 22, of the '080 patent and the corresponding structure of the Orthman device to be substantial, or whether the different structure of the Orthman device is merely an insubstantial change which adds nothing of significance to the structure disclosed in the '080 patent specification. See *Ishida Co., Ltd. v. Taylor*, 221 F.3d 1310 (Fed. Cir. 2000). The defect in the defendant's motion for summary judgment was its failure to present evidence regarding the perspective of one of ordinary skill in the relevant art. See *Lighting World, Inc., supra.*

The district court, however, concluded that because the Orthman device did not employ a pivotal connection, the "pivotal connection limitation" of element 4 was missing from the Orthman device. But a pivotal connection is not a "limitation" for purposes of determining whether each limitation of claim 22 has been met, literally or equivalently, by the structure of the Orthman device.

> The individual components, if any, of an overall structure that corresponds to the claimed function are not claim limitations. Rather, the claim limitation is the overall structure corresponding to the claimed function. This is why structures with different numbers of parts may still be equivalent under § 112, ¶ 6, thereby meeting the claim limitation.

*Odetics, Inc. v. Storage Technology Corp.*, 185 F.3d 1259, 1268 (Fed. Cir. 1999). Here, the limitation at issue was the overall structure corresponding to the function recited in element 4. The district court erred in construing the pivotal connection as a "limitation," instead of determining whether the structure of the Orthman device was equivalent, pursuant to the principles explained above, to the overall structure corresponding to the function recited in element 4.

The defendant contends that the issuance of patent No. 5,511,623 (the '623 patent) for the Orthman device tends to

prove noninfringement; presumably, the Patent Office would not have issued the '623 patent if the Patent Office had believed it to interfere with the '080 patent, which had been disclosed as prior art in the application for the '623 patent. However, federal law permits a civil action to resolve claims of interference between issued patents, which implicitly admits the possibility that issued patents may nonetheless conflict. See, generally, 35 U.S.C. § 291 (2000); *Slip Track Systems, Inc. v. Metal-Lite, Inc.*, 304 F.3d 1256 (Fed. Cir. 2002). Moreover, the application for the '623 patent was filed September 12, 1994, and the patent was not issued until April 30, 1996—well after the expiration of the '080 patent due to Beehner's failure to pay the maintenance fee for the '365 patent. Even if it was presumed that the Patent Office would not issue a patent that conflicted with a preexisting patent, that presumption would not apply where the preexisting patent had expired.

The defendant's burden, under Nebraska law, was to present evidence that would, if uncontradicted at trial, prove that New Tek could not have prevailed in an action against Orthman Manufacturing for enforcement of the '080 patent. But there was no evidence sufficient to support a finding that element 4, claim 22, of the '080 patent was not equivalent to the corresponding structure of the Orthman device, and no other evidence that would show that the Orthman device, as a matter of law, did not infringe on the '080 patent. In the absence of evidence tending to prove noninfringement, when New Tek is given the benefit of all reasonable inferences deducible from the evidence, the defendant did not present a prima facie case for summary judgment. The district court erred in concluding to the contrary.

## CONCLUSION

We conclude that we have subject matter jurisdiction over the instant case, as the questions of patent law presented are merely incidental to a state law cause of action. The district court did not err in holding a *Markman* hearing and construing the '080 patent as a matter of law, or in determining that element 4 of claim 22 of the '080 patent was a means-plus-function element. However, the court erred in entering summary judgment on the issue of damages, given the record with which it was presented.

The judgment of the district court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.